AO 91 (Rev. 11/11)  Criminal Complaint



FILED

2019 Apr-16 PM 06:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Alabama

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| John Cimino and<br>Katherine Barnett | ) | Case No.<br>19-mj-165-SGC |
| | ) | |
| _Defendant(s)_ | ) | |

APR 1 6 2019

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___10/1/2014 through 2/29/2016___ in the county of ___Madison___ in the ___Northern___ District of ___Alabama___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349<br>18 U.S.C. § 1347 | Conspiracy to Commit Health Care Fraud<br>Health Care Fraud |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Erik Srock, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: ___04/16/2019___

_____
_Judge's signature_

City and state: ___Birmingham, Alabama___

Staci G. Cornelius, United States Magistrate Judge
_Printed name and title_



**FILED**

APR 16 2019

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

## THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEAST DIVISION

UNITED STATES OF AMERICA )
)
v.                             )      **Case No. 19-mj-165-SGC**
)
**JOHN CIMINO and**            )
**KATHERINE BARNETT**          )

## CRIMINAL COMPLAINT

I, Erik Srock, being duly sworn, hereby state the following:

### Health Care Fraud

1.      Beginning in or about October 2014 and continuing to in or about

February 2016, in Madison County in the Northern District of Alabama,

defendants Dr. John Cimino and Katherine Barnett did knowingly and willfully

conspire with each other and others, to commit health care fraud, and in

furtherance of the conspiracy and to effect its objects, submitted or caused the

submission of false claims in the Northern District of Alabama and elsewhere, in

violation of 18 U.S.C. §§ 1349 and 1347.

2.      I am a Special Agent with the Defense Criminal Investigative Service

(DCIS), and have been so employed since 2015. Prior to this, I was with the Army

CID Major Procurement Fraud Unit from June 2014 to June 2015 and with the Air

Force Office of Special Investigations from 2011 to 2014. I am responsible for

1

investigating federal criminal violations, including health care fraud, occurring within the Northern District of Alabama and elsewhere.

3.     Title 18, United States Code, Section 1347, provides in relevant part: whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

4.     Title 18, United States Code, Section 1349, provides: Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

5.     This affidavit is made in support of criminal complaints commanding the arrest of John Cimino and Katherine Barnett. Based on the investigation and the information contained in this affidavit, probable cause exists to believe that beginning in or about October 2014 and continuing to in or about February 2016, in Madison County in the Northern District of Alabama and elsewhere, defendants John Cimino and Katherine Barnett did knowingly and willfully conspire with each

2

other and others to commit health care fraud, and, in furtherance of the conspiracy and to effect its objects, submitted or caused the submission of the false claims identified in the table listed below in the Northern District of Alabama and elsewhere in violation of 18 U.S.C. §§ 1349 and 1347. The following recitation of facts and circumstances are provided as a direct result of my personal observations, information I have received from other participating agents and law enforcement officers, and information obtained from court and law enforcement records.

6. A "health care benefit program" under Section 24(b) of Title 18, United States Code, is defined as any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual and includes any individual or entity who provided a medical benefit, item, or service for which payment may be made under the plan or contract.

7. TRICARE is a health care program of the United States Department of Defense (DoD) Military Health System that provides coverage for DoD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their dependents, and survivors. The Defense Health Agency (DHA), an agency of the DoD, is the military entity responsible for overseeing and administering the TRICARE program. TRICARE is a "health care benefit program" as defined in 18 U.S.C. § 24(b). Individuals who receive benefits through TRICARE are referred to as TRICARE "beneficiaries."

3

8.     TRICARE pays for medically necessary services and supplies required in the diagnosis and treatment of illness or injury.  Benefits include specified medical services and supplies provided to eligible beneficiaries from authorized civilian sources, including pharmaceuticals.

9.     In general, "compounding" is a practice in which a licensed pharmacist; a licensed physician; or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combined, mixed, or altered ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient.  Compound drugs are not approved by the U.S. Food and Drug Administration (FDA); that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compound drugs.

10.     Compound drugs can be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient.  For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compound drug can be prepared without the substance that triggers the allergic reaction.  Compound drugs can also be prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill and needs the drug in a liquid form that was is otherwise available.

4

11.     Dr. John Cimino is a physician licensed to practice medicine in the State of Alabama with a primary specialty in obstetrics and gynecology.  Dr. Cimino practiced at the Center for Women's Healthcare in Huntsville, Alabama which billed TRICARE for treatment rendered to beneficiaries of the program.

12.     Barnett was a marketer for Company A and owner of Medical Sports Performance LLC (Medical Sports), purportedly located at 7052 Pale Dawn Place Southeast, Owens Cross Roads, Alabama 35763.

13.     Company A was a compounding pharmacy located in Vestavia Hills, Alabama.  Company A billed TRICARE for compound prescriptions it provided to beneficiaries of the program.

14.     Dr. Cimino treated a female patient base at the Center for Women's Healthcare in Huntsville, Alabama, including TRICARE program beneficiaries. Dr. Cimino received kickback payments from Barnett for permitting Barnett to refer Dr. Cimino's patients to Company A.

15.     Barnett used Medical Sports, which was a shell company, to receive kickbacks from Company A and others for referring prescriptions for compound creams to be billed to TRICARE.  Barnett then used Medical Sports to pay kickbacks to the prescribing physician, Dr. Cimino.  Bank records collected during the investigation show Barnett was paid approximately $208,810.62 from Company A.

5

16.     According to Person A, a former employee of Dr. Cimino's who was interviewed on March 8, 2016 and June 3, 2016, Barnett offered to pay Dr. Cimino and his employees for each compound medication prescription Dr. Cimino wrote, which was then billed to TRICARE by Company A. Specifically, Barnett offered to pay Person A $50.00 per prescription.

17.     Dr. Cimino instructed Person A and other employees to speak to patients about obtaining prescriptions for compound medications. Dr. Cimino instructed these employees to specifically target TRICARE beneficiaries because TRICARE reimbursed at a higher rate than other insurance companies.

18.     According to Person A, Barnett provided Dr. Cimino's employees with Company A's prescription pads that contained a list of the compound medications the employee could select.

19.     Prior to a patient's visit, Dr. Cimino instructed Person A on which compound medication to pitch to the patient. Dr. Cimino directed Person A to bring the prescription pad into the exam room and to discuss the benefits of the compound medications with the patient.

20.     Dr. Cimino instructed Person A to tell patients that Company A would waive any co-pay so that there would be no cost to the patient for obtaining the compound medications. This induced many patients to agree to the medications.

6

21.    Dr. Cimino instructed Person A on what compound medications to check on the prescription pad. Dr. Cimino then signed or stamped the prescriptions or had a member of his staff, including Person A or the receptionist, stamp the prescriptions.

22.    Person A stated that Dr. Cimino asked his staff daily how many prescriptions they wrote.

23.    Prescriptions and beneficiary information were faxed either by Dr. Cimino's employees to Company A, or by Barnett using a fax line associated with her company, Medical Sports. A review of prescriptions obtained from Company A show a fax number and header I know to be associated with Medical Sports.

24.    According to Person B, a friend and business associate of Barnett's who was interviewed on July 20, 2017, Barnett told Person B that Dr. Cimino provided Barnett with blank pre-signed prescription forms and Barnett completed the prescriptions, and faxed the information to Company A.  Person B witnessed Barnett completing prescriptions in her home that were already signed. Barnett told Person B that Dr. Cimino did not care what Barnett included on the prescription and that Barnett was "making money."

25.    Bank records for Barnett show that she received payment from Company A into her Medical Sports bank account and withdrew large amounts of cash in order to pay kickbacks to Dr. Cimino, occasionally on the same day.

7

26.    Numerous TRICARE beneficiaries were interviewed and stated that they did not receive or did not request the medication billed to TRICARE on their behalf. Some beneficiaries did not have a doctor-patient relationship with Dr. Cimino as detailed further below.

27.    C.W. was interviewed on August 15, 2017 and stated that she was never a patient of Dr. Cimino's, but she was a patient of a physician who officed next to Dr. Cimino and for whom Barnett previously worked. C.W. stated that she did not receive a compound medication. Information provided by Company A and TRICARE data showed compound medications as prescribed for C.W. by Dr. Cimino and sent to an address C.W. recognized as her sister's home. Company A billed TRICARE $6,775.88 for the medication prescribed to C.W. and TRICARE paid $5,604.46.

28.    A.D. was interviewed on March 14, 2019 regarding three different medications that TRICARE data showed Dr. Cimino prescribed for her and which were billed to TRICARE by Company A. A.D. stated that Dr. Cimino was her OBGYN during her pregnancy. A.D. stated that Person A discussed a stretch marks prescription with A.D. and a Zofran-like cream for morning sickness. A.D. used each cream for only a little while as she did not think either helped.

TRICARE billing data for A.D. shows that Dr. Cimino prescribed A.D. an oral Zofran tablet during the same timeframe. Compound medications are for

8

patients who cannot take an oral equivalent either due to trouble swallowing (as in children and the elderly) or because of an allergy to some ingredient in the tablets. A.D.'s prescriptions were sent to Company A from Barnett's Medical Sports fax number.

29.    O.M. was interviewed on May 12, 2016 and stated he was approached by a Company A marketer while shopping at a Dollar General on a visit to Huntsville. He and his wife, K.M., lived in Georgia. The marketer asked him if he had skin problems, migraines, or other pain. O.M. told the marketer that he had knee pain. The marketer showed O.M. a pamphlet and told him that he could try out the medications on a trial basis and there would be no cost to him. O.M. gave the marketer his military information and driver's license.

30.    Before receiving the creams, O.M. stated that he received a call from Company A with additional information about the creams. O.M. asked K.M. if she wanted to try the creams. K.M. agreed and they provided K.M's information to Company A too. O.M. used the creams for four weeks (or one bottle) and received a call from Company A asking if he wanted a refill. O.M. declined. O.M. stated that he is not a patient of Dr. Cimino's and never saw a doctor prior to receiving the medications.

31.    K.M. was interviewed on May 11, 2016 and stated that she received scar cream and headache medication. She never used the medication. K.M.

9

thought she signed up for a trial with Company A. K.M. stated that she is not a patient of Dr. Cimino's and never saw a doctor prior to receiving the medications.

32. TRICARE billing data shows prescriptions for compound medications for O.M. and K.M. as prescribed by Dr. Cimino. TRICARE paid Company A $14,402.40 for three medications for O.M. and $11,502.92 for three medications to K.M.

33. E.P. was interviewed on March 30, 2016 and stated she was a patient of Dr. Cimino for many years. During an appointment, an employee of Dr. Cimino's noticed scars on E.P.'s knees and told her Medicare was giving away scar cream. E.P. agreed to get the cream until she received a call from what she thought was Dr. Cimino's office stating that there was a $17 copay (based on my investigation, I believe it was actually a call from Company A). Price cancelled the prescription. About a week later the medication came anyway but the label indicated it was for E.P.'s stomach. E.P. denied any scarring or issues with her stomach. When she received an explanation of benefits showing that TRICARE was billed $6,444.06 and paid $5489.02, she contacted the pharmacy to complain.

34. For these beneficiaries, Dr. Cimino and Barnett caused to be submitted the false claims reflected in the table below:

10

| Beneficiary | Approximate Date of Claim | Claim Number | Amount Billed | Nature of the Falsity |
|---|---|---|---|---|
| C.W. | 1/6/15 | *6315 | $6,775.88 | No doctor-patient relationship; Not medically necessary |
| A.D. | 3/18/15 | *7725 | $451.75 | Not medically necessary |
| K.M. | 2/11/15 | *9395 | $7,776.46 | No doctor-patient relationship; Not medically necessary |
| O.M. | 2/2/15 | *3205 | $7,789.80 | No doctor-patient relationship; Not medically necessary |
| E.P. | 1/2/15 | *4775 | $6,444.06 | Not medically necessary |

35.    From in or about October 2014 through in or about February 2016, the exact dates being unknown, Dr. Cimino and Barnett caused the submission of over approximately $304,538.49 in false and fraudulent claims to TRICARE for medications, the vast majority of which were unnecessary and induced by illegal kickbacks.

36.    Based on the above information, I believe that there is probable cause to believe John Cimino and Katherine Barnett conspired to commit healthcare

fraud and did commit health care fraud in violation of Title 18, United States Code,

§§ 1349 and 1347.

Respectfully submitted,

Erik Srock
Special Agent
Defense Criminal Investigative Service

Subscribed and sworn to before me on this \_\_\_ day of April, 2019, at
_____ , in Birmingham, Alabama.

Stacie G. Cornelius
United States Magistrate Judge

12